IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–01334–EWN–MEH

AT&T CORP., a New York corporation,

    Plaintiff,

v.

GENERAL STEEL DOMESTIC SALES, LLC,
d/b/a GENERAL STEEL CORPORATION,

    Defendant.

**ORDER AND MEMORANDUM OF DECISION**

    This is a breach of contract case. Plaintiff AT&T Corporation alleges that Defendant General Steel, Inc.: (1) breached the contract between them; and (2) was unjustly enriched by Plaintiff's services. This matter is before the court on "Plaintiff's Motion For Partial Summary Judgment," filed March 28, 2005. Jurisdiction is based on 28 U.S.C. § 1332 (2006), diversity of citizenship.

**FACTS**

*1.    Factual Background*

    Plaintiff provides long distance, toll-free voice, private line data, and associated local telecommunications services. (Pl.'s Mot. For Partial Summ. J., Pl.'s Mem. of Law in Supp. of

Mot. For Partial Summ. J. at 1 [filed Mar. 28, 2005] [hereinafter "Pl.'s Br."].)  Defendant sells pre-fabricated steel buildings.  (*Id.*)  In March 2001, the parties entered into a contract wherein Plaintiff agreed to provide Defendant with long distance and toll-free voice services.  (*Id.*, Statement of Undisputed Facts ¶ 2; *admitted at* General Steel's Resp. Br. to Pl.'s Mot. and Mem. of Law For Partial Summ. J. at 1 [filed May 9, 2005] [hereinafter "Def.'s Resp."].)  The parties' contract is entitled "Master Agreement 104416," (hereinafter "the contract").  (Pl.'s Br., Statement of Undisputed Facts ¶ 1; *deemed admitted at* Def.'s Resp., *passim*.)[1]  The contract consists of General Terms and Conditions and Plaintiff's Service Order Attachment.  (*Id.*, Statement of Undisputed Facts ¶ 2; *deemed admitted at* Def.'s Resp., *passim*.)  Pursuant to the terms of the contract, Defendant agreed to pay Plaintiff for its use of the voice services at the rates and charges specified in the attachments.  (*Id.*, Statement of Undisputed Facts ¶ 3; *deemed admitted at* Def.'s Resp., *passim*.)  The contract set forth certain discounts applicable to

---

[1]Defendant did not follow my procedural rules when responding to Plaintiff's motion for partial summary judgment.  My procedural rules require that:
> [a]ny party opposing the motion for summary judgment shall in a section of the brief styled Response to Statement of Undisputed Facts, admit or deny the asserted material facts set forth by the movant.  The admission or denial shall be made in separate paragraphs numbered to correspond to movant's paragraph numbering.  Any denial shall be accompanied by a brief factual explanation of the reasons for the denial and a specific reference to material in the record supporting the denial. . . . [F]ailure to follow [these procedures] may result in an order granting other proper relief.

(*See* Practice Standards — Civil, Special Instructions Concerning Motions for Summary Judgment ¶¶ 4, 8.)  Defendant does not admit or deny any of Plaintiff's proffered facts.  (Def.'s Br., *passim*.)  Indeed, Defendant does not include a section setting forth any facts of its own.  Accordingly, I deem Plaintiff's proffered facts admitted as true for purposes of this Order and Memorandum of Decision.  *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")

Defendant's use of voice services. (*Id.*, Statement of Undisputed Facts ¶ 4; *deemed admitted at* Def.'s Resp., *passim*.)

Plaintiff set forth the rates and charges for these services in "AT&T Tariff F.C.C. No. 1." (*Id.*, Statement of Undisputed Facts ¶ 5; *deemed admitted at* Def.'s Resp., *passim*.) Plaintiff billed Defendant in accordance with the rate schedules set forth in F.C.C. Tarrif 1. (*Id.*, Statement of Undisputed Facts ¶ 6; *deemed admitted at* Def.'s Resp., *passim*.) The F.C.C. Tariff rates Plaintiff incorporated into the contract provided one rate for "partially connected" calls — calls where only one party on the call is Plaintiff's customer, and a slightly lower rate for "fully connected" calls — calls where both parties on the call are Plaintiff's customers. (*Id.*, Statement of Undisputed Facts ¶ 8; *deemed admitted at* Def.'s Resp., *passim*.) Defendant paid for some, but not all, of the voice services Plaintiff billed. (*Id.*, Statement of Undisputed Facts ¶ 7; *deemed admitted at* Def.'s Resp., *passim*.)

Defendant contends that during the pre-contract negotiations, Plaintiff's account executive, Regina Whitefield, verbally quoted Defendant a lower rate than the rate incorporated into the contract. (*Id.*, Statement of Undisputed Facts ¶ 10; *deemed admitted at* Def.'s Resp., *passim*.) The parties never incorporated this alleged "lower rate" into the contract. (*Id.*, Statement of Undisputed Facts ¶ 11; *deemed admitted at* Def.'s Resp., *passim*.) Jeffrey Knight, on behalf of Defendant, testified that he did not think Whitefield did anything "intentionally fraudulent" by allegedly quoting Defendant a lower rate. (*Id.*, Statement of Undisputed Facts ¶ 12, Ex. 2 at 43–4 [Dep. of Jeffrey Knight]; *deemed admitted at* Def.'s Resp., *passim*.) Knight testified that Whitefield simply may not have known what she was talking about. (*Id.*, Statement

of Undisputed Facts ¶ 13; *deemed admitted at* Def.'s Resp., *passim*.) Whitefield allegedly made the misrepresentation solely to Defendant at Defendant's corporate headquarters. (*Id.*, Statement of Undisputed Facts ¶ 14; *deemed admitted at* Def.'s Resp., *passim*.)

Defendant acknowledges that it discovered the rate discrepancy "within the first few months of [its] beginning service," and it did not have any reason to believe that it did not receive the invoices in May and June 2001. (*Id.*, Statement of Undisputed Facts ¶ 15, Ex. 2 at 60 [Dep. of Jeffrey Knight]; *deemed admitted at* Def.'s Resp., *passim*.) Page eleven of the June 11, 2001 invoice that Plaintiff sent Defendant contained a "summary of . . . connected usage." (*Id.*, Statement of Undisputed Facts ¶ 16; *deemed admitted at* Def.'s Resp., *passim*.)

The usage summary in the June 11, 2001 invoice listed the specific percentage that Plaintiff billed Defendant for "fully connected" calls in one column and the percentage of "partially connected" calls in a different column. (*Id.*, Statement of Undisputed Facts ¶ 17; *deemed admitted at* Def.'s Resp., *passim*.) The usage summary in the June 11, 2001 invoice indicates 10,834 calls totaling 31,539 minutes for subaccount number 131–268–8924–779. (*Id.*, Statement of Undisputed Facts ¶ 18; *deemed admitted at* Def.'s Resp., *passim*.) The usage summary shows that only three percent of the 10,834 calls were fully connected while the other ninety-seven percent were partially connected. (*Id.*, Statement of Undisputed Facts ¶ 19; *deemed admitted at* Def.'s Resp., *passim*.)

### 2. *Procedural History*

Plaintiff filed a complaint in this court on June 30, 2004 asserting claims for (1) breach of contract, and (2) quantum meruit/unjust enrichment. (Compl. for Breach of Contract and

-4-

Quantum Meruit/Unjust Enrichment ¶¶ 12–20 [filed June 30, 2004] [hereinafter "Compl."].) On July 16, 2004, Defendant filed an answer, affirmative defenses, and counterclaims. (Def. General Steel's Answer, Affirmative Defenses and Countercl. [filed July 16, 2004].) Defendant asserted four counterclaims: (1) unjust enrichment, (2) violation of Colorado Consumer Protection Act ("CCPA"), (3) common law fraud in the inducement, and (4) negligent misrepresentation. (*Id.* ¶¶ 24–49.)

On August 5, 2004, Plaintiff filed a partial reply to Defendant's counterclaims in which it replied to each of Defendant's counterclaims except for Defendant's second claim for relief, violation of the CCPA. (Partial Reply to Countercls. [filed Aug. 5, 2004].) On the same day, Plaintiff filed a motion to dismiss Defendant's second claim for relief for violation of the CCPA. (Pl.'s Mot. to Dismiss Def.'s Second Claim for Relief in Counterclaim For CCPA Violation [filed Aug. 5, 2004].) On August 20, 2004, Defendant filed amended counterclaims. (Def. General Steel's Am. Countercl. ¶¶ 25–50 [filed Aug. 20, 2004].) Additionally, on August 20, 2004, Defendant filed a motion to strike Plaintiff's partial reply to counterclaim. (General Steel's Mot. to Strike AT&T's Partial Reply to Countercl. [filed Aug. 20, 2004].)

On March 18, 2005, I issued an Order and Memorandum of Decision on "Plaintiff's Motion to Dismiss Defendant's Second Claim For Relief in Counterclaim For CCPA Violation," and "General Steel's Motion to Strike AT&T's Partial Reply to Counterclaim." (Order and Mem. of Decision [filed Mar. 18, 2005].) I denied Defendant's motion to strike Plaintiff's partial reply in its entirety because Plaintiff's partial reply to Defendant's counterclaims one, three, and four was proper. (*Id.* at 3–4.) I determined that the Federal Rules of Civil Procedure permitted

Defendant to amend counterclaim number two once as a matter of course because Plaintiff did not file a responsive pleading as to that counterclaim. (*Id.* at 4.) I denied Plaintiff's motion to dismiss Defendant's second counterclaim because it was directed at an inoperative pleading. (*Id.* at 4–5.)

On March 28, 2005, Plaintiff filed a motion for partial summary judgment. (Pl.'s Br.) Plaintiff argues that it is entitled to summary judgment on: (1) its breach of contract claim because Defendant did not pay Plaintiff for the services it owed under the contract; (2) Defendant's CCPA claim because there is "no significant public impact" and the statute of limitations expired; and (3) Defendant's common law fraud in the inducement claim because Defendant cannot prove specific facts showing a knowing misrepresentation. (*Id.* at 6–14.) On May 9, 2005, Defendant filed a response to Plaintiff's motion for partial summary judgment. (Def.'s Resp.) On May 31, 2005, Plaintiff filed a reply in support of its motion for partial summary judgment. (Pl.'s Reply in Supp. of Its Mot. For Partial Summ. J. [filed May 31, 2005] [hereinafter "Pl.'s Reply"].) This matter is fully briefed.

**ANALYSIS**

*1.     Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the

initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Celotex Corp.*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "'Only disputes over facts that might affect the outcome of the suit under governing law will preclude the entry of summary judgment.'" *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998) (quoting *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 [10th Cir. 1990].)

### *2.   Plaintiff's Breach of Contract Claim*

Plaintiff asserts that it is entitled to summary judgment on its breach of contract claim against Defendant for unpaid voice services in the amount of $118,147.21. (Pl.'s Br. at 6.) Specifically, Plaintiff contends that:

> [Defendant] agreed to pay [Plaintiff] for its use of the [v]oice [s]ervices at the rates and charges specified in the attachments. The [c]ontract set forth certain discounts applicable to [Defendant's] use of [v]oice [s]ervices. The rates and charges for these services were set forth in [Plaintiff's] Tariff F.C.C. No. 1. [Plaintiff] billed [Defendant] for [v]oice [s]ervices in accordance with the rate schedules set forth in

> F.C.C. Tariffs 1. [Defendant] paid for some, but not all of the [v]oice [s]ervices and still owes [Plaintiff] $118,147.21.

(*Id.* at 7 [internal citations omitted].)

In Colorado, Plaintiff must establish the following elements to prevail on its breach of contract claim: (1) existence of a contract; (2) performance by Plaintiff or some justification for nonperformance; (3) failure to perform by Defendant; and (4) damages. *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Here, the parties entered into the contract on March 14, 2001. (Pl.'s Br. ¶¶ 1–2, Ex. 1 [Master Agreement]; *deemed admitted at* Def.'s Resp., *passim*.) Additionally, it is undisputed that Plaintiff performed under the contract. (*Id.* ¶¶ 1–7, Ex. 1 [Master Agreement]; *deemed admitted at* Def.'s Resp., *passim*.) Further, Plaintiff offered sufficient evidence that it suffered damages in the amount of $188,147.21. (*Id.*, Ex. 3 ¶ 5 [Aff. of Duane Carbine].) Thus, I only need to discuss the third element — nonperformance by Defendant.

Pursuant to the terms of the contract, Defendant agreed to pay Plaintiff for its use of the voice services at the rates and charges specified in the attachments to the contract. (*Id.*, Statement of Undisputed Facts ¶ 3; *deemed admitted at* Def.'s Resp., *passim*.) Defendant paid for some, though not all, of the services. (*Id.*, Statement of Undisputed Facts ¶ 7; *deemed admitted at* Def.'s Resp., *passim*.) It follows that Defendant is in breach in the amount of $118,147.21 unless Defendant is justified in its non-performance.

Defendant asserts that it was justified in not performing because Whitefield "negligently misrepresented the facts," thus "establishing [Defendant's] defense to the contract and claim of breach thereof." (Def.'s Resp. at 8–9.) Specifically,

> Defendant contends that "Whitefield's fraudulent or negligent misrepresentations . . . induced [Defendant] to enter into the contract of the parties that [Defendant] would not have entered into had [Defendant] known the truth, i.e. the rates and total costs of telecommunications services would actually be higher than those charged by its previous telecommunications provider, ICG.

(*Id.*)  Defendant does not offer any support for this proposition.  Conclusory statements without any citation to the record are not enough to defeat summary judgment.  *L&M Enter., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000).

Despite the fact that Defendant does not cite to any record support for its position, I briefly evaluate Defendant's argument.  As stated above, Defendant's alleged defense to Plaintiff's breach of contract claim is that Whitefield's comments "induced" Defendant to enter into the contract with Plaintiff.  (Def.'s Resp. at 8–9.)  Whitefield allegedly made these comment prior to the parties signing the contract.  (*Id.*, Statement of Undisputed Facts ¶ 10; *deemed admitted at* Def.'s Resp., *passim*.)  It is undisputed that the contract did not embody the lower rate allegedly quoted by Whitefield.  (*Id.*, Statement of Undisputed Facts ¶ 11; *deemed admitted at* Def.'s Resp. at 8–10.)  Moreover, the contract's integration clause provides that "[t]his agreement constitutes the entire agreement between the parties with respect to the services.  This agreement supersedes all prior agreements, proposals, representations, statements or understandings, whether written or oral, or the rights and obligations relating to the services."  (Pl.'s Br., Ex. 1 § 12.9 [Master

Agreement].) Thus, the integration clause bars Defendant's assertion that Plaintiff promised it a lower rate during contract negotiations.

Defendant asserts that "[i]t is not that [Defendant] contends that [] Whitefield represented a contractual term in violation of the integration clause of the contract, but that her misrepresentation induced [Defendant] to enter into the contract. . . ." (Def.'s Resp. at 8.) In order to prove negligent misrepresentation in Colorado, Defendant must demonstrate that "'[Plaintiff] supplied false information to [Defendant] in a business transaction, and failed to exercise reasonable care or competence in obtaining or communicating information on which other parties justifiably relied.'" *Guardian Title Agency, L.L.C. v. Matrix Capital Bank*, 141 F. Supp. 2d 1277, 1283 (D. Colo. 2001) (quoting *Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver, N.A.*, 892 P.2d 230, 236 [Colo. 1995]). Defendant does not offer any evidence to support its defense of negligent misrepresentation. Instead, Defendant contends that it is Plaintiff's burden to "assail" Defendant's "position that [] Whitefield negligently misrepresented the ultimate price of [Plaintiff's] services in the above manner . . . in [Plaintiff's] motion for summary judgment on this issue." (Def.'s Resp. at 9.) Defendant's argument is wholly incorrect. Plaintiff produced facts and evidence to demonstrate that there is no genuine issue of fact on its breach of contract claim. (Pl.'s Br., *passim*.) It is not Plaintiff's burden to disprove Defendant's alleged "defense to the contract and claim of breach thereof." (*See* Def.'s Resp. at 8–9.) Rather, Defendant must produce evidence to defeat summary judgment and mere conclusory allegations are insufficient. *L&M Enter*., 231 F.3d at 1287. The party opposing a motion for summary judgment must set forth "specific facts" to defeat the motion, "[u]nsupported conclusory

allegations . . . do not create a genuine issue of fact." *Id.* Indeed, "[a] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Finally, Defendant offers one paragraph containing various citations to Jeffrey Salazar's and Knight's deposition testimony and an affidavit from Carla Montoya in support of its position that Whitefield did not inform Defendant of the correct rate Plaintiff intended to charge Defendant. (Def.'s Resp. at 9–10.) Again, all of this testimony is not relevant in light of the contract and corresponding integration clause which both parties negotiated and signed. Moreover, this deposition testimony does not support Defendant's alleged defense of negligent misrepresentation. At most, the cited testimony supports a "covert unit billing" theory rather than a negligent misrepresentation defense to the contract based on Whitefield's alleged misrepresentations. Accordingly, Plaintiff is entitled to summary judgment on its breach of contract claim.

### 3.  *Defendant's CCPA Claim*

Plaintiff contends that it is entitled to summary judgment on Defendant's CCPA claim because there is no genuine issue of material fact on the "significant public interest" prong of the claim. (Pl.'s Br. at 9.) Plaintiff argues that Defendant's claim must fail because Whitefield's alleged misrepresentations did not "reach[] or impact[] anyone but [Defendant]." (*Id.* at 11.) To prove a private cause of action under the CCPA, Defendant must demonstrate that: (1) Plaintiff engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of Plaintiff's business, vocation, or occupation; (3) it significantly impacts the public as

actual or potential customers of Plaintiff's goods, services, or property; (4) Defendant suffered injury in fact to a legally protected interest; and (5) the challenged practice caused Defendant's injuries. *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003). Plaintiff only challenges the third element. (Pl.'s Br. at 10–11.)

The Colorado Supreme Court has set forth relevant considerations to determine whether a challenged practice significantly impacts the public within the context of a CCPA claim. *Id.* at 149 (citing *Martinez v. Lewis*, 969 P.2d 213, 222 [Colo. 1998]). These considerations include (1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future. *Martinez,* 969 P.2d at 222. In *Rhino*, a distributor brought a CCPA claim against his supplier. *Rhino*, 62 P.3d at 150. Based on the aforementioned considerations, the *Rhino* court determined that there was no record to support a finding of significant public interest. *Id.* The court determined that: (1) the alleged fraud impacted at most three out of 550 dealers; (2) the dealer was represented by counsel when entering into the contract; and (3) the alleged misrepresentations were made to the potential distributors rather than the general public. *Id.*; *but cf. Hall v. Water*, 969 P.2d 224, 238 (Colo. 1998) (holding that since misrepresentations were made to the public generally, "taking the form of widespread advertisement and deception of actual and prospective purchasers," the activity impacted the public). Ultimately, the court in *Rhino* held that, "[w]hen a transaction is no more than a private

dispute, as it is here, 'it may be more difficult to show that the public has in interest in the subject matter.'" *Rhino*, 62 P.3d at 150 (quoting *Hall*, 969 P.2d at 238 [Scott, J., dissenting]).

Here, the basis of Defendant's "significant public impact" allegation is that Plaintiff, through Whitefield, misrepresented the number of "fully connected" calls Defendant would be charged for. (Def.'s Resp. at 11.) I must evaluate the *Rhino* factors as set forth above and applied by that court. First, it is undisputed that Whitefield made the alleged misrepresentation only to Defendant at Defendant's headquarters. (Pl.'s Br., Statement of Undisputed Facts ¶ 14; *deemed admitted at* Def.'s Resp., *passim*.) In fact, Defendant admits that it "is the only consumer directly affected by the challenged practices of [] Whitefield." (Def.'s Resp. at 11.) Second, Defendant is a large sophisticated company, presumably the "largest direct seller of steel buildings in the country." (Pl.'s Br. at 1.) Moreover, Defendant admits that it negotiated the contract between Plaintiff and Defendant. (*Id.*, Ex. 2 at 21–23 [Dep. of Jeffrey Knight].) Defendant cannot now be heard to complain that it is unsophisticated and did not have sufficient bargaining power. Finally, Defendant must demonstrate that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future. *Martinez*, 969 P.2d at 222. Defendant has not proffered any evidence that the challenged practice has previously impacted other consumers. (Def.'s Resp. at 12.) Not surprisingly, Defendant's response brief fails to cite to any evidence whatsoever in support of its CCPA claim. (*Id.*) Defendant's entire argument in opposition to Plaintiff's motion for summary judgment on this issue consists of five sentences, strung together without any citation to legal authority or the record. (*Id.*) Here, the

*Rhino* factors weigh in favor of finding that there is no significant public impact in this case. Thus, Plaintiff is entitled to summary judgment on Defendant's CCPA claim.

In attempting to resist summary judgment, Defendant fatally asserts that summary judgment is inappropriate because it is Plaintiff's burden to produce "evidence to establish [Defendant's] inability to prove the element of significant public interest." (Def.'s Resp. at 11.) While it is true that it is Plaintiff's burden to establish that there is no genuine issue of material fact as to Defendant's claim, *Celotex*, 477 U.S. at 323, Defendant cannot resist summary judgment by asserting mere conclusory allegations in support of its claim. *L&M Enter.*, 231 F.3d at 1287. As discussed in detail above, a party opposing a motion for summary judgment must set forth "specific facts" to defeat the motion and "[u]nsupported conclusory allegations . . . do not create a genuine issue of fact." *Id.* Again, Defendant has not produced any evidence in support of its CCPA claim. (Def.'s Resp. at 12.) It is apparent that Defendant does not understand Federal Rule of Civil Procedure 56 and motions for summary judgment in general. I admonish Defendant in the future to comply with my local rules and avail itself of the Federal Rules of Civil Procedure in future submissions to this court. Accordingly, Plaintiff is entitled to summary judgment on Defendant's CCPA claim.

### 4. *Defendant's Common Law Fraud in the Inducement Claim*

Plaintiff asserts it is entitled to summary judgment on Defendant's common law fraud in the inducement claim because Defendant believes that Whitefield did not make an intentionally fraudulent misrepresentation. (Pl.'s Br. at 14.) In order to prevail on its fraudulent inducement claim, Defendant must show that: (1) Plaintiff made a knowing misrepresentation of material fact;

-14-

(2) Defendant relied on the material misrepresentation; (3) Defendant was justified in relying on the alleged misrepresentation; and (4) damages. *Williams v. Boyle*, 72 P.3d 392, 399 (Colo. App. 2003). Plaintiff contends that it did not make a knowing misrepresentation of material fact and there is no genuine issue of fact regarding this element. (Pl.'s Br. at 14.) In support, Plaintiff offers the deposition testimony of Knight. (*Id.*, Ex. 2 at 43–44.) As stated above, Knight, on behalf of Defendant, testified that he did not think Whitefield did anything "intentionally fraudulent" by allegedly quoting Defendant a lower rate. (*Id.*, Statement of Undisputed Facts ¶ 12, Ex. 2 at 43–4 [Dep. of Jeffrey Knight]; *deemed admitted at* Def.'s Resp., *passim*.) Indeed, Knight testified that Whitefield simply may not have known what she was talking about. (*Id.*, Statement of Undisputed Facts ¶ 13; *deemed admitted at* Def.'s Resp., *passim*.)

While it is undisputed that Defendant's representative did testify as stated above, the testimony is based on mere speculation or conjecture. Such speculation is not admissible evidence sufficient to warrant summary judgment on this claim. *See Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999). "To support a . . . verdict, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Id.* Accordingly, Plaintiff is not entitled to summary judgment on Defendant's fraud in the inducement claim.

### *5.  Conclusions*

Based on the foregoing it is therefore ORDERED that:

1.    Plaintiff's motion for partial summary judgment (# 44) is GRANTED in part and DENIED in part. Plaintiff's motion is granted with respect to its breach of contract claim and

Defendant's CCPA claim.  Plaintiff's motion is denied with respect to Defendant's fraud in the inducement claim.

    2.    The court will hold a Final Pretrial Conference commencing at **2:45 o'clock p.m.** on Friday, **April 28, 2006**, in Courtroom A1001 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.  In preparing for and participating in the conference, the parties and counsel will (1) follow the Instructions for Preparation and Submission of Final Pretrial Order, a copy of which can be downloaded from the court's web site, specifically http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord_ins.pdf and (2) utilize the specific template located at http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord.wpd  These specific web addresses should be used to insure that the proper format is observed.

    3.    The hearing scheduled for Friday, March 31, 2006, is VACATED.

Dated this 30th day of March, 2006.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge